UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Elbert Simpkins, | ) | C/A No. 5:12-1447-GRA-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Sheriff Al Cannon, Captain Keys, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights while detained at the Charleston County Detention

Center ("CCDC"). This matter is before the court on the Motion for Summary Judgment filed by

Defendants on November 26, 2012. ECF No. 50. As Plaintiff is proceeding pro se, the court

entered a *Roseboro*[1] order on November 27, 2012, advising Plaintiff of the importance of such

motions and of the need for him to file an adequate response. ECF No. 51. Plaintiff responded to

Defendants' Motion for Summary Judgment on December 21, 2012, January 14, 2013 and

January 24, 2013. ECF Nos. 56, 67, 72. Defendants filed a reply to Plaintiff's response on

January 22, 2013, and Plaintiff filed sur-replies to Defendants' reply on January 28, 2013 and

February 19, 2013. ECF Nos. 71, 73, 83. Defendants' motion is now ripe for consideration.

This case was referred to the undersigned United States Magistrate Judge for all pretrial

proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation

is entered for the court's review.

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of
dismissal/summary judgment procedures to pro se litigants).

I.     Factual and Procedural Background

Plaintiff Elbert Simpkins was a pre-trial detainee housed at CCDC during the time period relevant to his Complaint.  ECF No. 1.  Plaintiff is currently incarcerated at the Orangeburg County Detention Center.  Plaintiff filed his Complaint on June 1, 2012 asserting that CCDC failed to protect him from an attack by other inmates.  *Id.*  Specifically, Plaintiff contends that in January 2010 he was placed on protective custody and moved to 1-A Unit "due to several problems [he] had while at the county jail."  *Id.*  Plaintiff alleges that his canteen was stolen on March 13, 2010 while he was out of his cell getting a haircut and that he reported the theft to the correctional officers at the "officer's desk."  ECF No. 1-1.  Plaintiff avers that other inmates in his Unit, who saw him reporting the theft, "began to issue threats to beat [him] up on [their] next recreation time." *Id.* Plaintiff informed Defendant Johnson of the threats and gave him an Inmate Request Form explaining that he was being threatened.  *Id.* Defendant Johnson responded to Plaintiff's Inmate Request Form stating that "we will make a note to have you rec & room alone for the rest of your stay at 1-A."  *Id.*  Plaintiff contends that two days later, on March 15, 2010, he was in his cell by himself, as noted in his March 13, 2010 Inmate Request Form, when Defendant Randall placed two inmates, John Williams and Albert Walters,  in Plaintiff's cell.  *Id.* Plaintiff contends that these inmates were not on protective custody "but on administrative segregation."  *Id.*  Plaintiff alleges that he was assaulted by Williams and Walters and suffered head injuries and a broken finger, and that both inmates were subsequently charged with Second Degree Lynching by the Charleston County Sheriff's office.  *Id.*  Plaintiff argues that Defendant Randall, who put these inmates in his cell knowing that Plaintiff was on protective custody, either setup Plaintiff to be lynched or had "no regard for the system at CCDC that protects inmate[s] on Protective Custody Status."  *Id.*  Plaintiff contends that he now fears for his life at

2

CCDC.  *Id.*  Plaintiff seeks $2.5 million in damages for psychological torment, pain and suffering, and cruel and unusual punishment. *Id.*  Plaintiff also requests that the court transfer him to another correctional institution,[2] and for the "named officers to be investigated for their participation in this situation."  *Id.*

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed

---

[2] The undersigned notes that when Plaintiff filed his Complaint he was incarcerated at McCormick Correctional Institution.  ECF No. 1-3.

by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.     Analysis

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 50-1 at 3-6.   Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739). Further, pretrial detainees, which Plaintiff was at all times relevant to these claims, are required to exhaust administrative remedies. *See* 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary

program."); *see also Rutland v. Dewitt*, C/A No. 8:09-13-SB, 2010 WL 288217, *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

In support of their Motion for Summary Judgment, Defendants offer the affidavit of Michael Tice who was the former Captain of Security at CCDC. ECF No. 50-2 at 2. Captain Tice attests that "[t]here is an established Grievance Procedure at CCDC and the Grievance Procedure is available to all detainees and inmates." *Id.* Captain Tice avers that inmates' and detainees' personnel files are "maintained by CCDC records department and are kept under [his] custody and control." *Id.* Captain Tice avers that upon Plaintiff's admission to CCDC that the CCDC Orientation Handbook, which contained an explanation of the grievance procedure, "was

presented, and explained, to [Plaintiff]." *Id.* Captain Tice attests that "[g]rievance forms submitted by detainees and inmates are processed and acted upon and then permanently filed in the detainee's or inmate's file at CCDC." *Id.* at 3. Captain Tice contends that he searched Plaintiff's personnel file and Plaintiff's file contained seven grievances and that upon examination of these grievances he "certif[ies] that Plaintiff did not submit any Grievances regarding the March 15, 2010, incident." *Id.* Captain Tice attests that "[b]ased on the policies and procedures of CCDC, [his] knowledge of the lawsuit, and [his] detailed examination of Plaintiff's file, Plaintiff [] has not exhausted his available and known grievance and administrative procedures and remedies concerning his perceived complaints." *Id.*

Plaintiff argues that he did exhaust his administrative remedies and contends that he filed a grievance concerning the incident that happened on March 15, 2010 and never received a response. ECF No. 56 at 3. Plaintiff contends that he accidentally dated his grievance March 13, 2010, instead of March 15, 2010, and argues that one of the seven grievances that Defendants acknowledged he filed "pertained to the incident on March 15, 2010." *Id.* Plaintiff alleges that, in response to his discovery requests asking for all his institutional records, Defendants produced only one "[grievance] dated 6/17/10 that has nothing to do with the March 15, 2010 incident." *Id.* Plaintiff argues that, because Defendants did not comply with his discovery requests, he does not have evidence that he complied with the PLRA and therefore whether he exhausted his administrative remedies is a genuine issue of fact for trial. *Id.*

In reply to Plaintiff's arguments concerning his exhaustion of his administrative remedies, Defendants contend that they provided Plaintiff with copies of all the grievances that

Plaintiff filed[3] and Plaintiff has not produced a copy of the "March 13, 2010" grievance in support of his contentions. ECF Nos. 71, 71-1. In response to this contention, Plaintiff argues that Defendants have not provided him with the incorrectly dated grievance, but he "swear[s] under oath [he] did file a grievance concerning the incident that occurred on March 15, 2010." ECF No. 73. Plaintiff avers that he "do[es] not understand why [he is] not being provided with the proper and necessary requested materials from the defendants (such as the grievance dated incorrectly for the March 15, 2010 incident)." *Id.* Plaintiff argues that Defendants' summary judgment motion lacks honesty and contains several untrue statements regarding the reason why Inmates Williams and Walters were placed in Plaintiff's cell and how long the inmates remained in Plaintiff's cell. *Id.* Plaintiff argues that these statements were changed only in response to the arguments he made in opposition to Defendants' summary judgment motion. *Id.* Plaintiff asks that the court take this under consideration when evaluating Defendants' summary judgment motion. *Id.;* ECF No. 83.

The undersigned has reviewed the evidence before the court, including the copies of the grievances Plaintiff filed while detained at CCDC,[4] and is constrained to find that Plaintiff did not exhaust his administrative remedies. Plaintiff's general statements concerning the March 2010 grievance that he alleges he filed is insufficient to overcome the undisputed evidence that there is no grievance on file for the incident at issue. Plaintiff filed several grievances in June and August 2010, but none mentioned the March 2010 incident. *See* ECF No. 98-1.

---

[3] The undersigned notes that Plaintiff was not provided with a copy of his grievances until January 4, 2013, after he had filed his response to Defendants' summary judgment motion. *See* ECF No. 71-1.

[4] The court ordered Defendants to file copies of the grievances filed by the Plaintiff while he was at CCDC. ECF No. 95. Defendants complied and provided the court with copies of Plaintiff's grievances. ECF No. 98-1. On the bottom of each grievance form it indicates that the original copy goes in the Central File, a yellow copy is given to the inmate, and a pink copy is put in the inmate's records file. *See* ECF No 98-1. If Plaintiff filed a grievance in March, as he alleges, he should have a copy of the grievance in his possession.

Accordingly, because Plaintiff failed to exhaust his available administrative remedies before filing this action, the undersigned recommends that Defendants' Motion for Summary Judgment be granted. *See Pozo,* 286 F.3d at 1024 (holding that an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983.").

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 50, be GRANTED. If the court accepts this recommendation, Plaintiff's pending motion to change venue,[5] ECF No. 92, will be moot.

IT IS SO RECOMMENDED.

May 1, 2013                                           Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

---

[5] Plaintiff filed an earlier motion to change venue, ECF No. 62, which was denied on February 5, 2013. ECF No. 77.